JACOB DANIEL v. WILLIAM D. ROBINSON.

*False representations—Statute of frauds.*

Plaintiff sued defendant for his alleged false representations by which plaintiff was induced to deliver brick to *subcontractors* to be used in buildings they were erecting for defendant. The representations were to the effect that plaintiff would be safe in delivering the brick, and would get his pay therefor, there being money enough to pay for all material under the control of defendant, which would be first paid for, and plaintiff was directed to send his bill into the architect's office, and it would be paid by defendant. Plaintiff was aware of the insolvency of the *subcontractors*, and had stopped delivering brick for that reason, of which facts defendant had notice.

*Held*, that How. Stat. § 6188, requiring all representations concerning the character, conduct, credit, ability, trade, or dealings of any other person to be in writing in order to support an action thereon, has no application to the case, and that unless there was such an amount of money due or to become due the contractors, and unless defendant's relations with them were such as to enable him to control and direct the payment of the money to plaintiff for the brick when delivered, defendant's representations were fraudulent, the testimony showing that plaintiff relied upon their truth.

Error to Wayne. (Jennison, J.) Argued April 20, 1887. Decided June 16, 1887.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*James H. Pound*, for appellant.

*Charles W. Casgrain* and *Charles S. McDonald*, for defendant.

CHAMPLIN, J. Plaintiff sued defendant in an action of trespass on the case for falsely and fraudulently representing to plaint ff, and informing him, that the firm of Thomas Sherk & Co., composel of Thomas Sherk and John F. Durham, were men fit to be trusted, and that he would be safe in furnishing to said firm the brick required by them in constructing certain brick houses for defendant, and that there was no danger in doing so, and that he would get his pay for any brick he might furnish to them; that the material would be paid for in full first, and there was plenty of money to pay it, and then the contractors would get the balance; that plaintiff should go on, and deliver the brick as ordered by Sherk & Co., and, after he got it delivered as ordered, to send his bill into the architect's office, to Mr. Wood, his agent, and plaintiff would be paid by defendant; and plaintiff alleges that, rolying upon these representations, he went on and delivered 60,000 brick at $5.50 per thousand, and presented his bill therefor to Mr. Wood, who at first put him off, and finally refused to pay altogether; that these representations were false and fraudulent, and made for the purpose of inducing plaintiff to part with his property.

The representations claimed were wholly verbal.

Plaintiff does not claim that the representations were made of and concerning the character, conduct, credit, ability, trade, or dealings of Sherk & Co. He alleges in his declaration that he knew Sherk & Co. were then and there in

bad and insolvent circumstances, and unfit to be trusted with goods on credit. He also alleges that Sherk & Co. were sub-contractors, and that he informed defendant that he was informed that the principal contractors and Sherk & Co. had taken the contract for a sum less than it was possible for them to erect the buildings, and that Sherk & Co. were men of no financial ability outside of the money they might receive upon their contract from defendant, either directly or through the principal contractors, for the erection of said buildings, and he inquired of him, before he would furnish any more brick, whether he would get his pay; and there-upon the representations were made which plaintiff claims to have been fraudulent.

I do not think the statute (How. Stat. § 6188) has any application to a case of this kind. The gist of the action is the false representations made by defendant of the relations existing between himself and his contractors, and his state-ment that the plaintiff should go on and fill his order with Sherk & Co., and send in his bill to him (defendant), and it would be paid; that there was money enough, of which he had the control, to pay for all labor and material; and that he should not be afraid, but go on and deliver the bricks, and he should get his pay. Unless there was such an amount of money due or to become due the contractors, and unless his relations with his contractors were such that he could control and direct the payment of the money to plaintiff for the bricks when he should have completed the delivery, his representations made to plaintiff were fraudulent; for, under the testimony, there can be no doubt that he led the plaintiff to believe that he had the authority to and would protect and pay him for the bricks out of moneys under his control pay-able to his contractors.

His representations were not that Sherk & Co. would pay plaintiff for his bricks, or that they were entitled to credit, or that they had the ability to or would pay him therefor,

but they related to his own ability, and the control he had of funds, and the application he would make thereof if plaintiff would go on and furnish the bricks for his houses to Sherk & Co. The statute was not intended to meet such a case. It was not an agreement to answer for the debt or default of another, nor did what was said raise contract relations between plaintiff and defendant as an original promise, but the representations were such that the plaintiff had a right to rely upon them as truthful, and upon the good faith of defendant in performing his voluntarily assumed task of applying the money he claimed to control to the payment of plaintiff for the bricks delivered in reliance upon his representations.

The court erred in taking the case from the jury. The judgment is reversed, and a new trial granted.

The other Justices concurred.